UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAVIER SOLORIO ALVAREZ,

Petitioner,

v.

Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; Todd LYONS, Acting Director, U.S. Immigration and Customs Enforcement; Patrick DIVVER, Field Office Director, San Diego Field Office, U.S. Immigration and Customs Enforcement; Christopher LAROSE, Senior Warden, Otay Mesa Detention Center; Sirce OWEN, Acting Director of the Executive Office for Immigration Review (EOIR), U.S. Department of Justice; Todd BLANCHE, Acting Attorney General, U.S. Department of Justice; Does 1-2,

Respondents.

Case No.: 26-cv-4091-GPC-MMP

**ORDER GRANTING PETITIONER'S MOTION FOR FURTHER RELIEF**

[ECF No. 9]

On July 24, 2026, this Court granted in part Petitioner's petition for writ of habeas corpus and ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a). ECF Nos. 6, 7. Now, Petitioner has filed an ex parte application for further relief

pursuant to Federal Rule of Civil Procedure 60(b)(6), alleging that Respondents failed to comply with the Court's July 24, 2026, order. ECF No. 9. Respondents opposed the motion. ECF No. 11. The Court held a hearing on the matter on August 27, 2026. ECF No. 18. For the reasons set forth below, the Court GRANTS Petitioner's motion and ORDERS Respondents to provide Petitioner with a constitutionally compliant bond hearing.

## BACKGROUND

Petitioner is a citizen of Mexico who has resided in the United States since the nineties. ECF No. 11-1, at 5. Petitioner's last entry into the United States was in 2010, and he has been in the United States continuously since that date. *Id.*; ECF No. 1, ¶ 34. On July 2, 2026, Petitioner was arrested for driving under the influence. *See* ECF No. 11-1, at 6. Petitioner hit a parked car and caused approximately $1,000 of damage to his own vehicle. ECF No. 11-1, at 20-21. This is Petitioner's only arrest. *Id.* at 6.

On July 3, 2026, Respondents detained Petitioner in Vista, California, and he remains detained at the Otay Mesa Detention Facility. *Id.* ¶ 3. On July 24, 2026, this Court ordered Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a), at which (1) Petitioner bore the burden of demonstrating by a preponderance of evidence that he is not a flight risk or danger to the community; and (2) the immigration judge weighed the factors outlined in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). ECF No. 10, at 3–4.

On July 28, 2026, Petitioner had a bond hearing before an immigration judge ("IJ"). ECF No. 9-1, at 4. At the hearing, Petitioner produced identity documents and letters in support of his character. *Id.* at 3–4. The Department of Homeland Security ("DHS") produced a rap sheet showing that Petitioner was arrested on July 2, 2026, for driving under the influence. *Id.* at 4; ECF No. 9-2, at 102–120; ECF No. 11, at 3.[1] The IJ proceeded to

---

[1] Respondents have moved to file these documents under seal. However, these documents were already included in Petitioner's moving papers, to no opposition from Respondents. Accordingly, the Court DENIES Respondents motion to file documents under seal, ECF No. 12, as moot.

ask Petitioner questions about his arrest, to which Petitioner replied that he would like to remain silent. ECF No. 11-1, at 6.

The IJ asked Petitioner's counsel to provide a copy of the arresting police report and reset the hearing to August 5, 2026. ECF No. 9-1, at 4. After the initial hearing, Petitioner's counsel attempted to obtain a copy of the arrest report but was unable to do so. *Id.*

At the subsequent bond hearing, Petitioner answered some questions about his July 2, 2026, arrest and declined to answer others. ECF No. 11-1, at 17–19. For instance, Petitioner testified that, on July 2, 2026, he was driving and hit a parked car on the back-left side, causing about $1,000 damage to his own car and an unknown amount of damage to the parked car. *Id.* at 17, 21. He further testified that the accident occurred across the street from a house where he was working, and that he hit the car because he was distracted. *Id.* at 19, 23. Petitioner also testified that officers administered an alcohol test at the scene and informed him that it had inconclusive results. *Id.* at 18. Petitioner declined to answer the questions "Why did they arrest you?"; "How do you know the alcohol test did not have conclusive results?"; and "[W]hy would you be distracted enough to hit a parked car?" *Id.* at 17, 20. However, Petitioner subsequently clarified that the officer at the scene told him the test was inconclusive. *Id.* at 22.

The evidence before the IJ at the time showed that Petitioner had not been charged with any crimes related to his arrest. ECF No. 11-1, at 14.[2] Petitioner's counsel argued that Petitioner had met his burden to show that he is not a danger because there were no criminal charges against him nearly 30 days after the incident, and the evidence of a mere arrest could not establish dangerousness. ECF No. 11-1, at 14.

The IJ found that Petitioner had not carried his burden to show he is not a danger to the community. ECF No. 11-1, at 26. The IJ referenced that Petitioner was in a car accident

---

[2] In opposing Petitioner's motion, Respondents note that criminal charges have since been filed against Petitioner. ECF No. 11-1, at 33. Petitioner's counsel confirmed this at the hearing before the Court. However, it is undisputed that this information was not before the IJ at the bond hearing.

in an area he was familiar with that caused damage to his property and the property of others, and that he was subsequently arrested for driving under the influence. *Id.* The IJ also noted that, in bond proceedings, there need not be a conviction for the Court to consider an arrest for an offense. *Id.* at 25. Lastly, the IJ stated that, in civil immigration proceedings, adverse inferences are permitted from a noncitizen's silence, and the questions Petitioner declined to answer were directly relevant to his danger to the community. *Id.*

Petitioner now argues that the IJ did not comply with this Court's order by failing to provide a hearing that complied with due process or appropriately applied the legal standard outlined in *In re Guerra*. ECF No. 9-1, at 8. Specifically, Petitioner argues that the IJ relied entirely on Petitioner's arrest and refusal to answer certain questions about that arrest, which are not competent or probative evidence of danger. ECF No. 9-1, at 6. Petitioner also argues that the IJ's reliance on adverse inferences drawn from Petitioner's silence violated Petitioner's Fifth Amendment privilege against self-incrimination. *Id.* at 7.

## DISCUSSION

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### I. Exhaustion

Petitioner argues that Respondents did not comply with the Court's order and requests this Court's intervention to ensure compliance. The Government argues that

Petitioner must first be required to exhaust his administrative remedies. ECF No. 11, at 4–7.

Generally, petitions for a writ of habeas corpus are accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims"). However, "[i]rrespective of the prudential exhaustion doctrine . . . the Court retains jurisdiction to determine whether a party has complied with its earlier habeas order." *Diallo v. Casey*, No. 26-CV-2167-RSH-BLM, 2026 WL 1834391, at *2 (S.D. Cal. June 25, 2026) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court had authority to review compliance with its earlier order conditionally granting habeas relief.")). Additionally, a court may waive the prudential exhaustion requirement if: (1) "administrative remedies are inadequate or not efficacious"; (2) "pursuit of administrative remedies would be a futile gesture"; (3) "irreparable injury will result"; or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

In its previous order, the Court ordered Respondents to provide Petitioner with a hearing under 8 U.S.C. § 1226(a). Implicit in this order was the requirement that such a hearing comply with due process. Indeed, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Further, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]" *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Accordingly, Petitioner's allegations that his bond hearing did not comport with due process directly relate to this Court's authority to enforce its own habeas order.

Further, Petitioner has raised arguments regarding the extended period of detention he would face pending BIA review of his potentially inadequate bond hearing. Several courts—including those in this Circuit—have found that continued lengthy detention following a potentially legally or constitutionally inadequate hearing constitutes

irreparable harm sufficient to waive the prudential exhaustion requirement. *See W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *3 (W.D. Wash. Jan. 30, 2026) (finding irreparable injury where BIA review exceeded 200 days and "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals." (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *5 n.7 (E.D. Cal. Jan. 29, 2026) (holding petitioner satisfied irreparable injury *Laing* factor by "demonstrating the irreparable harm that would result from wrongful detention, which may result given the lengthy time it take to have an appeal decided."); *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (adopting reasoning of *C.A.R.V.*); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 125 (D.R.I. Dec. 3, 2025) (finding irreparable injury in the form of continued detention where petitioner would likely face several additional months of detention while awaiting BIA review); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (waiving exhaustion requirement where "delays inherent in the [BIA review] process . . . would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings"); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim.").

Accordingly, because Petitioner seeks enforcement of this Court's own habeas order and has shown that one of the *Laing* factors applies, the Court "excuse[s] prudential exhaustion in this case for purposes of reviewing compliance with the Court's prior order for a bond hearing." *Lu v. Divver*, No. 26-CV-781-JES-DEB, 2026 WL 1755174, at *4 (S.D. Cal. June 2, 2026) (collecting cases).

//

//

**II. Legal Standard**

The Ninth Circuit has held that a habeas court can review an IJ's dangerousness finding for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). *See also Zaitsev v. Warden of Adelanto ICE Processing Center*, No. 2:26-CV-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) ("In light of *Martinez*, courts may review an IJ's finding that an alien poses a flight risk for abuse of discretion."); *Lu*, 2026 WL 1755174, at *2 (noting courts review findings of dangerousness or flight risk for abuse of discretion). "'[A]buse of discretion' review does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (quoting *Martinez*, 124 F. 4th at 784) (alterations in original). Thus, "the Court must decide whether the IJ 'relied upon proof that—as a matter of law—could not establish'" the conclusion drawn. *Kharis v. Sessions*, No. 18-CV-04800-JST, 2018 WL 5809432, at *5 (N.D. Cal. Nov. 6, 2018) (quoting *Nguti v. Sessions*, No. 16-CV-6703, 2017 WL 5891328, at *3 (W.D.N.Y. Nov. 29, 2017)). The scope of this Court's review remains the same whether the government or petitioner bears the burden of proof. *Id.* Lastly, "the reviewing court must bear in mind that 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'" *Loba L.M.*, 2026 WL 710307, at *5 (quoting *Hernandez*, 872 F.3d at 981).

**III. Due Process Violation**

This Court ordered Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C § 1226(a) that complied with due process and at which the IJ considered the legal standard and factors outlined in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). In *Guerra*, the BIA identified nine factors that an IJ "may" consider and specified that an IJ could consider "[a]ny evidence in the record that is probative and specific." *Id.* at 40–41.

Since the BIA decision in *Guerra*, "several federal courts have used the 'probative and specific' evidence requirement to determine whether IJ's bond determinations comport with due process constraints." *Lu v. Divver*, No. 26-CV-781-JES-DEB, 2026 WL 1755174,

at *5 (S.D. Cal. June 2, 2026) (citing *Garcia v. Hyde*, 817 F. Supp. 3d 112, 127–28 (D.R.I. Dec. 3, 2025)). As applied to the consideration of pending criminal charges, an IJ is "permitted to consider pending criminal charges, provided the evidence of the charges [is] 'probative and specific.'" *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004 (N.D. Cal. 2018) (quoting *Barrientos v. ICE Field Office Director*, 667 Fed. Appx. 184, 184 (9th Cir. 2016)).

The charged conduct in *Barrientos v. ICE Field Office Director* provides an example of criminal charges that are probative of and specific to a Petitioner's danger. No. C15-982-RSL-JPD, 2015 WL 6554522 (W.D. Wash. Sept. 28, 2015), *aff'd*, 667 F. App'x 184 (9th Cir. 2016). There, the petitioner had been arrested for "an incident that involved driving under the influence of alcohol, a hit and run, and sexual abuse of a 17 year old female." *Id.* That evidence "was probative and specific because the petitioner had admitted that he fled the scene of the car accident and that the female involved was a minor. Further, the petitioner had two previous convictions." *Ortega-Rangel*, 313 F. Supp. 3d at 1004–05 (citing *Barrientos*, 2015 WL 6554522, at *2). Thus, the Ninth Circuit confirmed that the IJ was permitted to consider the probative and specific pending criminal charges in denying bond. *Barrientos v. ICE Field Off. Dir.*, 667 F. App'x 184 (9th Cir. 2016). Similarly, the evidence relied upon by the IJ in *Kharis v. Sessions*—which included a warrant for petitioner's arrest in Russia alleging that the petitioner had participated in a scheme to embezzle roughly $114 million—was probative and specific to the question of flight risk because it was "relevant to whether [petitioner] has the means to flee, whether he has motive to flee, and whether any amount of bond would provide a sufficient incentive to appear." 2018 WL 5809432, at *8.

Here, the IJ concluded that Petitioner is a danger to the community based solely on evidence and inferences surrounding Petitioner's arrest. Specifically, the IJ relied upon Petitioner's arrest for driving under the influence, the minor property damage that gave rise to that arrest, and his silence as to certain questions about that arrest. ECF No. 11-1, at 25–26, 27. The IJ concluded that the evidence "suggest[ed]" that Petitioner was "perhaps"

under the influence while driving, and that Petitioner had therefore failed to meet his burden of showing that he was not a danger. *Id.* at 27.

However, the facts before the IJ showed that Petitioner had not admitted to drinking while driving, had not been charged with or convicted of drinking and driving, and does not have a history of criminal convictions. Indeed, there was no evidence in the record containing facts that Petitioner drank and drove. Even the IJ noted that the evidence could only suggest that Petitioner was "perhaps" under the influence. *See Lu*, 2026 WL 1755174, at *6 (finding evidence was not probative and specific where IJ acknowledged that, based on the record, he "did not know the true reason" behind petitioner's alleged wrongdoing). Therefore, "the fact of [Petitioner's] arrest [was] not probative and specific and therefore the IJ's sole reliance on [his] arrest to detain [him] violated due process." *Ortega-Rangel*, 313 F. Supp. 3d at 1005.

As to Petitioner's silence, the IJ and Respondents are correct that, in the civil immigration context, "there is no prohibition against drawing an adverse inference when a petitioner invokes his Fifth Amendment right against self-incrimination." *Zuniga v. Garland*, 86 F.4th 1236, 1240 (9th Cir. 2023) (quoting *Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011)). However, the inferences available here are not probative and specific evidence of Petitioner's danger. Petitioner answered almost every question asked of him. In the few instances where he remained silent, the inferences available from that silence offer only a limited suggestion that Petitioner had potentially consumed alcohol. Such inferences do not "contain [the] details and specificity" necessary "to support the finding of danger." *Lu*, 2026 WL 1755174, at *6.

In so finding, this Court is not encroaching upon "the IJ's discretionary weighing of the evidence." *Kharis*, 2018 WL 5809432, at *5 (quoting *Slim v. Nielson*, No. 18-CV-02816-DMR, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018)). Rather, the Court finds that the IJ "relied upon proof that—as a matter of law—could not establish" that Petitioner was more likely than not a danger to the community. *Kharis*, 2018 WL 5809432, at *5 (quoting *Nguti*, 2017 WL 5891328, at *3). *See also*, *e.g.*, *Judulang v. Chertoff*, 562 F.

Supp. 2d 1119 (S.D. Cal. 2008) ("Where Petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate.").

In sum, "the IJ abused his discretion by relying upon evidence to find danger where such evidence was not probative or specific." *Lu*, 2026 WL 1755174, at *6. Such a reliance violated Petitioner's due process rights. *Ortega-Rangel*, 313 F. Supp. 3d at 1005 ("The fact of her arrest is not 'probative and specific' and therefore the IJ's sole reliance on her arrest to detain her violated due process."). Accordingly, the Court GRANTS Petitioner's motion for further relief seeking compliance with the Court's July 24, 2026, order.

**CONCLUSION**

For the reasons discussed above, the Court GRANTS Petitioner's motion and ORDERS the Government to provide Petitioner with a second bond determination hearing before a different immigration judge that complies with all constitutional requirements. Such a hearing shall be provided within fourteen (14) days of this Order, unless Petitioner requests a continuance.

At such a hearing, Petitioner will again bear the burden of demonstrating, by a preponderance of the evidence, that he is neither a danger nor flight risk. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

At such a hearing, the Immigration Judge SHALL:

- "[C]onsider the relevant evidence," *Vilchez v. Holder*, 682 F.3d 1195, 1198 (9th Cir. 2012);
- Apply the legal standard set forth in *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), wherein the evidence considered is probative and specific; and
- If he or she determines that bond is appropriate, consider alternative conditions of release and Petitioner's ability to pay bond. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

Respondents SHALL:

- Not transfer Petitioner from this district pending his bond hearing;
- Make a complete record of the bond hearing available to Petitioner and his counsel; and
- File a Notice of Compliance within seven (7) days of the hearing confirming that petitioner was provided with a bond hearing and stating whether Petitioner was released on bond.

IT IS SO ORDERED.

Dated: August 27, 2026

Hon. Gonzalo P. Curiel
United States District Judge